IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CRIM. NO. 04-491-1 |
| v. | : | |
| | : | CIVIL NO. 08-5475 |
| HAROLD SPURELL | : | |

SURRICK, J.  FEBRUARY 23 , 2012

## MEMORANDUM

Presently before the Court is Petitioner Harold Spurell's pro se[1] Habeas Corpus Motion Under 28 U.S.C. § 2255. (ECF No. 42.)[2] For the following reasons, Petitioner's Motion will be denied.

**I.  BACKGROUND**

**A.  Factual Background**

On the evening of February 11, 2004, Officers Frank Casey and Brian Lorenzo of the

---

[1] Pro se pleadings are subject to a liberal review. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Supreme Court has held that a pro se complaint, "however inartfully pleaded," is to be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See also Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

[2] Petitioner is no longer in federal custody. According to the Bureau of Prisons, he was released on April 3, 2009. (BOP Inmate Locator, available online at http://www.bop.gov/iloc2/LocateInmate.jsp.) At some point after his release, he was re-arrested. He is currently incarcerated at the State Correctional Institution at Retreat, which is operated by the Pennsylvania Department of Corrections. (Inmate Locator, available online at http://inmatelocator.cor.state.pa.us/inmatelocatorweb/.)
Generally, the writ of habeas corpus is not available to individuals not in custody. "[F]or a federal court to have jurisdiction, a petitioner must be in custody under the conviction he is attacking at the time the habeas petition is filed." *Obado v. New Jersey*, 338 F.3d 716, 717 (3d Cir. 2003). Because Petitioner was in federal custody when he filed the instant Motion, and because he remains subject to federal supervised release, we will address the merits of this Petition.

Philadelphia Police Department (PPD) saw a blue Chevrolet, driven by Petitioner, traveling recklessly through the intersection of Lehigh and Sedgley Avenues in North Philadelphia. (Trial Tr. 57-58, Mar. 21, 2005.) The officers attempted to pull the vehicle over; however, the driver refused to stop, and violated several traffic laws during his attempt to evade police. (*Id*. at 59-60.) After driving in the wrong direction on one-way residential streets, Defendant stopped on the 1800 block of North Taney Street. (*Id*. at 60.) The street was well-lit because of the presence of street lights and a hovering PPD helicopter that, by this time, had joined the pursuit and "lit up the whole block." (*Id*. at 65.)

After stopping his vehicle, Petitioner exited and ran down Taney Street. (*Id*. at 65-66.) As Petitioner exited the vehicle, Officer Lorenzo saw a "shiny object" fall from Petitioner's waist to the ground. (*Id*. at 66.) As Officer Casey chased Petitioner, Officer Lorenzo went to the area near the vehicle where the "shiny object" had fallen, and recovered a revolver, loaded with five rounds of live ammunition. The gun was approximately ten feet from Petitioner's car. (*Id*. at 66-67.) The firearm was later identified as a .38 caliber Iver Johnson Arms & Cycle Works revolver, with Serial Number 62802. (*Id*. at 70-73).

Officer Casey, along with other PPD officers, pursued Petitioner, and eventually apprehended him. (*Id*. at 69.) Petitioner was arrested, and charged with traffic violations and weapons offenses. (*Id*. at 70.) Petitioner was, at the time of his arrest, a convicted felon.

**B.    Procedural History**

On March 12, 2003, Petitioner was found guilty by a jury of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Judgment, ECF No. 33.) On December 13, 2005, Defendant was sentenced to sixty months in prison followed by three years of

supervised release. (*Id.*) The Third Circuit affirmed Defendant's conviction and sentence and entered a Final Judgment on September 12, 2007. (ECF No. 41).

On November 20, 2008, Defendant filed a pro se Motion to vacate his sentence, pursuant to 28 U.S.C. § 2255. (Pet'r's Mem., ECF No. 42.) The Government filed its response on February 27, 2009. (Gov't. Mem., ECF No. 46.) Petitioner filed a response to the Government's submission on March 30, 2009. (Pet'r's Resp., ECF No. 47.)

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

While the court may in its discretion hold an evidentiary hearing on a Section 2255 petition, *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989), such a hearing need not be held if the "motion and the files and records conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Petitioner first claims that this Court lacked subject matter jurisdiction to adjudicate his

3

criminal case. (Pet'r's Mem. 2-3; Pet'r's Resp. 2.) Specifically, Petitioner claims there is no "statutory, regulatory, or constitutional authority" which invests this Court with jurisdiction over this case. (Pet'r's Mem. 2.)

Petitioner's claim is meritless. Congress, in accordance with the powers provided by Article III of the United States Constitution, has conferred jurisdiction over violations of federal criminal law upon federal district courts. "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. The law on this issue is unambiguous. Petitioner was tried, and convicted, under 18 U.S.C. § 922(g). Because his crime was an "offense against the laws of the United States," this Court properly exercised jurisdiction over the matter. Accordingly, Petitioner's claim is denied.

### B.      Constitutionality of Public Law No. 80-772

Petitioner anticipates the argument that 18 U.S.C. § 3231 amounts to a positive grant of subject matter jurisdiction to this Court, and argues that Congress failed to constitutionally enact the legislation which created Section 3231. (Pet'r's Mem. 4.) Specifically, Petitioner claims that the 80th Congress passed Public Law Number 80-772, which enacted Section 3231 into law, in violation of the Constitution's bicameralism requirement. (*Id*. at 5.)

Petitioner's claim lacks both merit and originality. In recent years, federal courts have been inundated with habeas petitions alleging a host of procedural irregularities in Congress' June 25, 1948 passage of the relevant legislation. As our fellow federal courts have found, "[t]hese allegations are without a shred of validity." *United States v. Felipe*, No. 07-061, 2007 U.S. Dist. LEXIS 54834, at *5 (E.D. Pa. July 30, 2007). Indeed, "but for the frequency with

4

which [these claims] have recently been appearing on the federal court dockets, they would not warrant substantive discussion." *Id*. at *1.[3]

We will not waste our time delving into the legislative history of Section 3231 or the procedural mechanics behind its enactment. Suffice it to say that "Section 3231 was properly enacted and is binding." *Johnson v. Levi*, 284 F. App'x 987, 988 (3d Cir. 2008); *see also United States v. Risquet*, 426 F. Supp. 2d 310, 311 (E.D. Pa. 2006). "Public Law 80-772 passed both houses of Congress and was signed into law by President Truman on June 25, 1948." *Johnson*, 284 F. App'x at 988. There is no basis on which to conclude otherwise. Congress enacted Section 3231 in compliance with all constitutional procedures. Petitioner's claim is without merit and is denied.

### C. Prosecutorial Misconduct

Petitioner claims that the Government, represented by Assistant United States Attorney Joseph F. Minni, is guilty of prosecutorial misconduct. (Pet'r's Mem. 13.) Petitioner enumerates three specific allegations. First, he claims that Minni "fabricated" subject matter jurisdiction. (*Id*. at 13-14.) Next, he argues that Minni willfully permitted Officer Lorenzo, testifying at trial, to commit perjury. (*Id*. at 14.) Finally, Petitioner states that Minni committed perjury during his opening statement to the jury. (*Id*.)

Again, Petitioner's claims are meritless. Petitioner's first argument–that Minni "fabricated" subject matter jurisdiction–merely rehashes Petitioner's claim that this Court lacks

---

[3] For an extensive history of the origins of the dubious claim that Congress failed to properly enact Section 3231, we direct the curious reader to the investigative work performed by courts in the Eastern District of Kentucky. *See, e.g., Mullican v. Stine*, No. 07-129, 2007 U.S. Dist. LEXIS 29884, at *7-8 (E.D. Ky. Apr. 23, 2007).

jurisdiction. Obviously, it is not prosecutorial misconduct for the United States Attorney to seek indictment and conviction of an individual in a federal district court for violation of federal criminal laws.

Petitioner's second claim–that Minni "willfully and knowingly allowed" Officer Lorenzo to commit perjury–is similarly without merit. Petitioner points to Officer Lorenzo's testimony, during Petitioner's February 19, 2004 preliminary hearing in state court, that he did not see a gun in Petitioner's waistband or hand. (Pet'r's Mem. Ex. C. 17.) We note that Petitioner misquotes Officer Lorenzo's preliminary hearing testimony in his submission, which might create the mistaken impression that Officer Lorenzo gave contradictory testimony at that hearing. (Pet'r's Mem. 14.) Petitioner also quotes selectively. Officer Lorenzo's earlier testimony at the same hearing was consistent with his trial testimony. (Gov't. Mem. Ex. A 11-12.) Petitioner can point to no contrary testimony offered by Officer Lorenzo during Petitioner's jury trial. There is absolutely nothing in this record to support the serious allegation that Officer Lorenzo committed perjury, nor is there any basis for us to suspect that Minni was involved in suborning, encouraging or tolerating perjury.

Finally, Petitioner's claim that Minni committed perjury during his opening statement is also without merit. According to the United States Code, an individual is guilty of perjury when he has "taken an oath before a competent tribunal, officer, or person . . . [and] willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true." 18 U.S.C. § 1621(1). Minni took no oath prior to delivering his opening statement at trial. In any event, construing Petitioner's argument liberally, we will address the claim of prosecutorial misconduct.

In determining whether a prosecutor's comments constitute misconduct and warrant the grant of a new trial or other relief, we "consider the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction." *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995). The Supreme Court has instructed that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's *comments standing alone, for the statements or conduct must be viewed in context.*" *United States v. Young*, 470 U.S. 1, 11 (1985) (emphasis added). Therefore, if we were to determine that Minni spoke improperly in his opening statement, we would determine the effect of such a misstatement using a "harmless error" standard. *See Zehrbach*, 47 F.3d at 1267.

We need not engage in such an analysis because Minni did not speak improperly nor did he mislead. Petitioner claims that Minni's statement that Petitioner was "caught with a gun" is, in and of itself, false. (Pet'r's Mem. 14; *see also* Pet'r's Mem. Ex. B.) Petitioner was indicted by a federal grand jury for being a felon in possession of a firearm. The Government prosecuted Petitioner on this charge, and brought ample evidence to support the fact that Petitioner had, in fact, possessed a firearm. The goal of Minni's statement, we presume, was to introduce this idea, which formed the crux of the Government's case, to the jury. "The purpose of an opening [statement] is to give the broad outlines of the case to enable the jury to comprehend it." *Gov't of Virgin Islands v. Turner*, 409 F.2d 102, 103 (3d Cir. 1969). Minni's statement established, in "broad outlines," the nature of the evidence and the conclusions that the Government would ask the jury to draw. Nothing about this statement was improper, misleading or false, and thus this statement affords Petitioner no basis for relief.

7

Petitioner's claims regarding prosecutorial misconduct lack all merit. Accordingly, they are denied.

### D. Ineffective Assistance of Counsel

Petitioner claims that both his trial and appellate counsel were constitutionally ineffective. He alleges six specific examples of ineffective assistance by his trial counsel, Mark Wilson, and six by his appellate counsel, Christopher Furlong.

#### 1. *Legal Standard*

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show that: 1) his or her attorney's performance was deficient, and 2) the deficient performance prejudiced his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient representation, a defendant must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688). To establish prejudice, a defendant must show that "counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 694. Rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 695. Under *Strickland*, counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of "overcoming the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (citation omitted). While a defendant has the right to effective

assistance of counsel, courts have explained that the Constitution does not guarantee the right to a perfect trial. *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) ("[T]he court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel.").

"To avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable." *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1435 (3d Cir. 1996) (quoting *United States v. McGill*, 11 F.3d 223, 227 (1st Cir. 1993)). "Judicial scrutiny of counsel's performance must be highly deferential" as "there are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689.

In *Thomas v. Varner*, 428 F.3d 491 (3d Cir. 2005), the Third Circuit addressed how district courts should proceed in assessing whether an attorney's performance was constitutionally deficient under the first *Strickland* prong. In that case, the Court held, *inter alia*, that:

> [s]imilar to instances in which a court disposes of an ineffective assistance of counsel claim by analyzing the prejudice prong without considering whether counsel's performance was deficient, it is appropriate for a court to dispose of a case in which conduct is objectively reasonable without considering counsel's strategy. . . . Put differently, no hearings as to counsel's strategy are necessary in cases in which the conduct challenged is objectively reasonable, as courts can simply reject the claims on reasonableness grounds.

*Id*. at 501, n. 10.

### 2. Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was ineffective for "not challenging the government's subject matter jurisdiction at trial," despite Petitioner's entreaties at trial for his

9

attorney to do so. (Pet'r's Mem. 16.) We reject this claim. Petitioner may have asked his attorney to raise the same meritless claim that he raises here. Had trial counsel done so, he would not have prevailed. Consequently, his performance was not deficient. Petitioner cannot demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 695. It would not have been.

Next, Petitioner claims that "[t]rial counsel's frame of mind was that he did not want to go to trial," and cites a conversation with Petitioner where trial counsel advised Petitioner to accept a "deal" with the Government. (Pet'r's Mem. 16.) Petitioner offers nothing more than speculation that his trial counsel was mentally unprepared for, or unenthusiastic about, participation in Petitioner's trial. This is not a basis for relief. We must assess counsel's trial performance, not his psychological state. Petitioner offers only thin speculation that his counsel did not want to proceed to trial. Given the evidence and the jury's ultimate conclusion, the reasonableness of counsel's opinion that Petitioner should consider a guilty plea is self-evident. Counsel had an obligation to give Petitioner his best professional advice. We find no evidence of deficient performance by counsel or prejudice to Petitioner. Petitioner's claim lacks merit.

Next, Petitioner argues that trial counsel "tried to get Petitioner to stipulate to a variety of evidence . . . that the government did not have, and that the government had to prove beyond a reasonable doubt." (Pet'r's Mem. 16 (emphasis deleted).) Petitioner points to four attached stipulations: that Petitioner was, in fact, a convicted felon within the meaning of 18 U.S.C. § 922(g); that the Government had maintained its exhibits within a proper chain of custody; that the revolver and ammunition recovered by Officer Lorenzo constituted a "firearm" within the

10

meaning of 18 U.S.C. § 921; and that said "firearm" was manufactured outside the Commonwealth of Pennsylvania. (*See* Pet'r's Mem. Ex. C.) Petitioner's trial counsel did not, contrary to Petitioner's assertion, advise Petitioner to stipulate that he possessed the firearm in question. (*See* Pet'r's Resp. 8-9.)

Petitioner's trial counsel behaved well within the realm of "sound trial strategy," *Strickland*, 466 U.S. at 689, in advising Petitioner to stipulate to these four facts. Such stipulations are commonplace in matters such as this. It is true that the Government, at all times during a criminal trial, bears the burden of proving the elements of the conduct charged beyond a reasonable doubt. However, there is no basis for any doubt regarding the validity of these four facts, and requiring the Government to formally introduce evidence would have only served to consume the Court's time and energy and extend the length of the trial. Petitioner has offered no evidence that would lead us to doubt, for example, that the revolver constituted a firearm, or that it was manufactured outside of Pennsylvania. Furthermore, Petitioner has provided us no reason to believe that he was not, at the time of his arrest, a convicted felon, or that the Government somehow corrupted the chain of custody surrounding the inculpatory evidence in question. We do not doubt that had Petitioner not stipulated to these facts, the Government would have easily proven them. In any event, we do not believe that the decision to stipulate was objectively unreasonable. We note that Petitioner's counsel may have made a conscious decision that forcing the Government to prove, at trial, that Petitioner had been previously convicted of a felony, would have negatively affected the jury's view of his client and, in fact, been counterproductive.

We find no basis on which to conclude that trial counsel's performance was deficient.

11

Certainly, we cannot conclude that but for these stipulations, the result of Petitioner's trial might have been different. Petitioner's third claim lacks merit.

Next, Petitioner claims that trial counsel should have "object[ed] to government's witness, Officer Lorenzo's testimony that 'he saw a shiny object fall from Petitioner's waist.'" (Pet'r's Mem. 17.) Petitioner here restates his earlier claim that Officer Lorenzo delivered contradictory testimony at a preliminary hearing in state court. As we have explained, this claim is factually wrong. At the state court hearing, Officer Lorenzo testified that he "saw a shiny object coming from the defendant, as he was running, fall to the ground" and that "[i]t came from his waist area." (Gov't. Mem. Ex. A. 11.) This testimony is consistent with Officer Lorenzo's trial testimony. An objection to Officer Lorenzo's testimony, would have been futile. Accordingly, there is no reason to suspect that counsel's performance was in any way deficient, and this claim must be rejected.

Next, Petitioner claims that trial counsel "should have moved for a directed verdict or . . . mistrial due to the perjured testimony surrounding some alleged gun that there was no evidence to substantiate." (Pet'r's Mem. 17.) Petitioner states that this perjured testimony is "the so-called evidence used to charge Petitioner with a federal crime in the first instance." (*Id*. at 17-18.) We believe this refers to Officer Lorenzo's testimony. (*See* Pet'r's Resp. 9-10.) Trial counsel did not provide deficient representation in failing to object to Officer Lorenzo's testimony. Similarly, trial counsel did not provide deficient representation in failing to move for a directed verdict or mistrial. There was no evidence to impugn or impeach Officer Lorenzo or his testimony. Any motion based on an allegation of perjury would have failed. Petitioner's counsel was not constitutionally obligated to make such a motion and failing to make such a motion did

12

not constitute deficient performance. We reject Petitioner's claim.

Finally, Petitioner claims that trial counsel was ineffective for failing to object to Minni's opening remarks. (Pet'r's Mem. 18.) As discussed above, there was nothing objectionable in Minni's remarks. Had Petitioner's counsel objected, he would have been overruled. Petitioner's trial counsel did not act unreasonably by not objecting to Minni's opening statement because there was no basis for such an objection. Petitioner's claim lacks all merit.

Petitioner is unable to point to any conduct by his trial counsel which suggests deficient representation. Petitioner certainly cannot show that his trial counsel's performance fell, at any point, below an objective standard of reasonableness. Accordingly, Petitioner's request for relief on ineffective assistance of counsel grounds is denied.

### 3. *Ineffective Assistance of Appellate Counsel*

Petitioner claims that his appellate counsel, Christopher Furlong, failed to provide him with effective representation. These claims appear to be simply a rehash of claims discussed above.

First, Petitioner argues that appellate counsel was ineffective "for not raising a claim of subject matter jurisdiction" despite Petitioner's repeated requests that he do so. (Pet'r's Mem. 18.) This claim has no merit. This Court had subject matter jurisdiction over Petitioner's case, and any attempt to challenge the clear law that federal district courts have jurisdiction over violations of federal criminal law would have ended the same way the present attempt will end: in failure. Appellate counsel was not ineffective for declining to advance a theory whose utter frivolity is surpassed only by the persistence of its proponents.

Second, Petitioner argues that appellate counsel "was not diligent in his investigation" of

the record, "failed to analyze the discovery material," and consequently "missed substantial appellate claims" that are now barred. (Pet'r's Mem. 19.) Petitioner elaborates, in his reply memorandum, that he is referring to facts related to Officer Lorenzo's testimony. (Pet'r's Resp. 11.) As stated above, there is no evidence that Officer Lorenzo's testimony was in any way false. We note that under *Anders v. California*, 386 U.S. 738 (1967), appellate counsel informed Petitioner that this line of appeal lacked merit. We further note that the Third Circuit agreed that this issue was frivolous. *United States v. Spurell*, 245 F. App'x 127, 129 (3d Cir. 2007). Petitioner's argument is rejected.

Third, Petitioner claims that appellate counsel "should have raised the claim of prosecutorial misconduct" related to the Government's opening statement. (Pet'r's Mem. 19.) As noted above, the claim lacks all merit. There is simply no evidence of prosecutorial misconduct. Appellate counsel was not deficient in his performance by failing to raise a meritless claim.

Fourth, Petitioner claims that appellate counsel failed to raise a claim that the Government "knowingly allowed Officer Lorenzo to lie under oath." (Pet'r's Mem. 19.) This claim again merely restates the previous argument. There is no evidence to suggest that the Government suborned, solicited or tolerated perjury in any form.

Fifth, Petitioner claims that appellate counsel failed to "raise a claim that the U.S. Attorney allowed . . . Officer Lorenzo to testify falsly [sic] for the purpose of misleading the jury during the trial of this case." (Pet'r's Mem. 19.) This is the same meritless claim addressed above.

Sixth, Petitioner argues that appellate counsel should have alleged that his indictment was

"based upon false, misleading, and non-factual testimony and so-called evidence" presented to the grand jury regarding Petitioner's gun possession. (Pet Mem. 20.) Petitioner also alleges that the grand jury's indictment occurred only after the Government misled the jury as to whether or not the grand jury had subject matter jurisdiction over the criminal charges in question. (*Id*.) Petitioner's statement as to the grand jury testimony is purely conclusory. There is no evidence to support Petitioner's allegation. There was sufficient evidence not only to indict Petitioner, but also for a jury of his peers to find him guilty beyond a reasonable doubt.

Petitioner's claims that he was deprived of his Sixth Amendment right to effective assistance of counsel are wholly meritless. Accordingly, they are denied.

### E. Certificate of Appealability

The Government requests that we order that no certificate of appealability should issue with regard to Defendant's § 2255 claims. (Gov't. Mem. 28-29.) The Third Circuit's Local Appellate Rules instruct:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge shall state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

Third Circuit L.A.R. 22.2. Under 28 U.S.C. § 2253, a petitioner seeking a certificate of appealability must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Defendant has raised no viable claims. His claims are not only meritless, they are frivolous. No reasonable jurist could disagree with this assessment. Therefore, a certificate of appealability

will not issue.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is denied in full. This Court finds no basis to hold an evidentiary hearing or issue a certificate of appealability.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**